UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____


MORRIS L. HORWITZ,

               Plaintiff,

    v.                                                                                           18-CV-33-LJV
                                                                                 DECISION & ORDER

AMY ANN MACKINNON,

               Defendant.
_____


MORRIS L. HORWITZ,

               Plaintiff,
    v.                                                                                           18-CV-38-LJV
                                                                                 DECISION & ORDER

NEAVERTH ENTERPRISES, LLC et al.,

               Defendants.
_____


MORRIS L. HORWITZ,

               Plaintiff,

    v.                                                                                           18-CV-39-LJV
                                                                                 DECISION & ORDER

DOUGLAS MACKINNON,

               Defendant.
_____

On January 8, 2018, the defendants—Amy MacKinnon; Douglas MacKinnon; Neaverth Enterprises, LLC ("Neaverth"); Northern Resolution Group, LLC ("Northern Resolution"); Viking Holding Group, Inc. ("Viking"); and Ernest Sandor—moved to withdraw the reference from the United States Bankruptcy Court for the Western District of New York under 28 U.S.C. § 157(d) of three separate actions: Adversary Proceeding ("A.P.") Numbers 17-1029, 17-1039, and 17-1040.[1]  Docket Item 1;[2] Case No. 18-cv-38, Docket Item 1; Case No. 18-cv-39, Docket Item 1.  The plaintiff in all three actions, Morris Horwitz, is the chapter 7 trustee[3] in the involuntary bankruptcy of Resolution Management, LLC ("Resolution").  *See* Docket Item 1; Case No. 18-cv-38, Docket Item 1; Case No. 18-cv-39, Docket Item 1.

On August 14, 2018, upon the parties' consent, this Court withdrew the reference of the three adversary proceedings but referred the cases back to United States Bankruptcy Judge Michael J. Kaplan for all pretrial matters.  Docket Item 5; Case No.

---

[1] Federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  In this district, every proceeding under title 11 is referred automatically to the bankruptcy court.  *See Reaffirmation of the Orders Implementing The Act of July 10, 1984, Public Law 98-353* (W.D.N.Y. Dec. 3, 2001) (Larimer, C.J.).  District courts may withdraw the reference "for cause shown."  28 U.S.C. § 157(d); *see In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

[2] Unless otherwise noted, docket citations are to 18-cv-33, and page numbers in docket citations refer to ECF pagination.

[3] "The primary purpose of chapter 7 bankruptcy is to liquidate estate assets and distribute the proceeds to creditors, under the supervision of the [bankruptcy court] and without unsanctioned interference from creditors of the debtor."  *In re 461 7th Ave. Mkt., Inc.*, 623 B.R. 681, 689 (S.D.N.Y. 2020) (alteration, internal quotation marks, and citation omitted).  A trustee is appointed in chapter 7 cases.  *See* 11 U.S.C. § 701(a)(1).  The chapter 7 trustee represents the bankruptcy estate and has the "capacity to sue and be sued."  *Id.* § 323.

18-cv-38, Docket Item 5; Case No. 18-cv-39, Docket Item 5. And on January 8, 2021, this Court expanded its orders of reference, directing Judge Kaplan to hear any dispositive motions and to provide reports and recommendations as to resolving them. Docket Item 6; Case No. 18-cv-38, Docket Item 6; Case No. 18-cv-39, Docket Item 6.

On October 21, 2021, Horwitz moved for partial summary judgment in all three actions. Docket Item 11-2; Case No. 18-cv-38, Docket Item 10-2; Case No. 18-cv-39, Docket Item 10-2. Approximately a year later, Judge Kaplan issued a consolidated Report and Recommendation ("R&R") finding that Horwitz's motion in 18-cv-33 (A.P. 17-1029) should be denied and that his motions in 18-cv-38 (A.P. 17-1039) and 18-cv-39 (A.P. 17-cv-1040) should be granted. *See* Docket Item 9-2. This Court subsequently consolidated the three cases under 18-cv-33. Docket Item 12.

Horwitz objected to the R&R's recommendation that Horwitz's motion with respect to Amy MacKinnon (A.P. 17-1029; Case No. 18-cv-33) should be denied.[4] *See* Docket Item 9-3 at 11-19. Amy MacKinnon responded, Docket Item 9-4; and Horwitz replied, Docket Item 10. Douglas MacKinnon, Neaverth, Northern Resolution, Viking, and Sandor did not object to Judge Kaplan's R&R or respond to Horwitz's objections, and the time to do so has passed. *See* Docket Item 13.

A district court must review de novo a bankruptcy court's proposed findings of fact and conclusions of law to which a party objects. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(c)(1). This Court has carefully and thoroughly reviewed the R&R; the

---

[4] Horwitz also objected to Judge Kaplan's determination that a certain obligation was not a debt "in an abundance of caution in the event this Court remand[ed] the issue of insolvency to the Bankruptcy Court (which [Horwitz] contend[ed] it should not do)." Docket Item 9-3 at 9-11.

3

record in this case; the objections, response, and reply; and the materials submitted to Judge Kaplan.  Based on that review, the Court accepts and adopts Judge Kaplan's recommendation to deny Horwitz's motion for summary judgment as to Amy MacKinnon in 18-cv-33; to grant summary judgment against Amy MacKinnon in 18-cv-38 and enter judgment against her in the amount of $43,697.04; and to grant summary judgment against Douglas MacKinnon in 18-cv-39 and enter judgment against him in the amount of $773,235.68.  See Docket Item 9-2.

This Court also is inclined to adopt Judge Kaplan's recommendation to grant summary judgment against Viking and Northern Resolution in 18-cv-38.  As Judge Kaplan observed, however, the exact amount that Horwitz seeks against those two entities is unclear.  See id. at 4 (recommending "[m]oney judgments against Viking and Northern Resolution" but noting "it is not clear whether or not their liability would be joint and several as to just a portion of a judgment against Douglas MacKinnon").  Accordingly, within 30 days of the date of this decision and order, Horwitz shall submit an affidavit specifying the amount he seeks from those entities.  The defendants may respond to Horwitz's affidavit within 30 days, and Horwitz may reply within 14 days of the filing of any response.  The Court then will issue a supplemental decision as to Viking and Northern Resolution.

**BACKGROUND**

On November 6, 2008, FA Holdings Group, LLC ("First American"), filed a voluntary petition for chapter 11 bankruptcy.[5]  *In re FA Holdings Grp., LLC*, Case No. 8-bk-14966, Docket Item 1 (Bankr. W.D.N.Y. Nov. 6, 2008).  On March 16, 2009, First American's principals—Mark Bohn and Douglas MacKinnon—filed a motion under 11 U.S.C. § 363[6] to sell the company's assets to the principals' new company, Resolution.  *See id.*, Docket Item 350 at ¶¶ 21-23.  The bankruptcy court approved the sales agreement between First American and Resolution on March 30, 2009.  *Id.*, Docket Item 390.

About five months later, First American submitted its amended chapter 11 plan.  *See id.*, Docket Item 561.  Several creditors, including the SEC, objected to First American's chapter 11 plan because Resolution's third-party lender, Lakeview Advisors, LLC ("Lakeview"), appeared to be a "mere front" through which Bohn and MacKinnon could maintain control of First American's assets.  *See id.*, Docket Item 679 at 3-4; *see*

---

[5] "[T]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state."  *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) (quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985).  While chapter 7 bankruptcies require the appointment of a trustee, *see* 11 U.S.C. § 701(a)(1), a debtor undergoing a voluntary chapter 11 reorganization often can remain in control of the bankruptcy estate's assets, *see id.* §§ 1104, 1107(a).

[6] A chapter 11 debtor may seek judicial approval to sell property of the bankruptcy estate outside the ordinary course of business if there is a "sound business purpose" for doing so.  *In re Celsius Network LLC*, 647 B.R. 631, 647 (Bankr. S.D.N.Y. 2023); *see* 11 U.S.C. § 363(b)(1); *In re Lionel Corp.*, 722 F.2d 1063, 1066, 1071 (2d Cir. 1983).

*generally id.*, Docket Items 679, 680, and 688.  Those objecting creditors also sought the appointment of a chapter 11 trustee.  *See, e.g.*, *id.*, Docket Item 679 at 8.

On October 26, 2009, Garry Graber became the trustee of First American's chapter 11 bankruptcy.  *Id.*, Docket Item 728.  Several months later, Graber reported to the bankruptcy court that, through "extensive discussions and negotiations" designed to "maximize the return to creditors . . . while resolving allegations that the bankruptcy process ha[d] been utilized for [ ] fraudulent purposes," the parties had agreed to modify the terms of First American's chapter 11 plan.  *Id.*, Docket Item 762 at 5.  Under the new terms, Resolution would remit 50% of monthly net revenues to Lakeview and 25% of monthly net revenues to Graber to pay First American's unsecured creditors.  *See id.*, Docket Item 781 at 5.  Once Resolution repaid the Lakeview loan, it then would remit 40% of monthly net revenues to Graber.  *See id.* at 5-6.

On December 1, 2010, the bankruptcy court approved the modified terms of First American's chapter 11 plan.  *Id.*, Docket Item 908.  Resolution ultimately failed, however, to meet its obligations to Graber and First American's unsecured creditors.  *See id.*, Docket Item 956 at ¶ 18 ("Resolution's last payment to [Graber] was made on August 8, 2013.  Resolution has not made a payment to fund its obligations under [the modified terms of the chapter 11 plan] in 22 months.").

On July 27, 2015, Graber filed an involuntary chapter 7 petition against Resolution on behalf of First American and its unsecured creditors.  *In re Resolution Mgmt., LLC*, Case No. 15-bk-11712, Docket Item 1 (Bankr. W.D.N.Y. July 27, 2015). Graber reported that First American's unsecured creditors held claims against Resolution worth $15,215,296.10.  *Id.* at 2-3.  And on December 18, 2015, Horwitz

6

became the trustee of Resolution's involuntary chapter 7 bankruptcy.  *Id.*, Docket Item 72.  Horwitz then filed the three adversary proceedings—over which this Court now exercises jurisdiction—based on conveyances that Resolution made to Douglas MacKinnon's wife, Amy MacKinnon, and to various noteholders of Lakeview.  *See id.*, Docket Items 115, 130, and 131.

## **LEGAL PRINCIPLES**

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party."  *Id.*  "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence."  *Id.*

"If the evidence submitted in support of [a] summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citation, emphasis, and internal quotation marks omitted).  "An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law."  *Id.* (citation and internal quotation marks omitted).

**DISCUSSION**[7]

At issue are conveyances that Resolution made to noteholders of Lakeview and to Amy MacKinnon. Horwitz seeks to avoid those conveyances under 11 U.S.C. § 544(b).[8] *See In re Resolution Mgmt., LLC*, Case No. 15-bk-11712, Docket Items 115 at ¶ 2, 130 at ¶ 2, and 131 at ¶ 2. Section 544(b) allows a bankruptcy trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. § 544(b)(1). That "applicable law" includes state law. *See In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 416 (2d Cir. 2014) ("[Section] 544(b) of the [b]ankruptcy [c]ode permits a trustee to avoid any transfers that an unsecured creditor could avoid under applicable state law . . . .").

Accordingly, at issue in Horwitz's motions for partial summary judgment are his claims under sections 273, 274, and 275 of the New York Debtor and Creditor Law ("DCL"). *See, e.g.*, Docket Item 11-2 at 101-10. Those sections "define different types of conveyances by a debtor that become recoverable by creditors because [of] the conveyances' fraudulent nature." *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 610 (S.D.N.Y. 2018), *aff'd*, 776 F. App'x 16 (2d Cir. 2019) (summary order); *see* DCL

---

[7] The Court assumes the reader's familiarity with Judge Kaplan's analysis in the R&R. *See* Docket Item 9-2.

[8] Horwitz cites section 544 generally, but the provisions of section 544(a) are inapplicable here because Horwitz does not seek to avoid the conveyances on behalf of either: (1) a creditor who extended credit to Resolution at the commencement of Resolution's bankruptcy and had a judicial lien or an unsatisfied execution against Resolution; or (2) a bona fide purchaser of real property. *See* 11 U.S.C. § 544(a).

§§ 273-75 (McKinney 2009).[9]  To avoid a conveyance under DCL sections 273-75, a creditor must show by a preponderance of the evidence that the conveyance was constructively fraudulent.  See Kim, 311 F. Supp. 3d at 610.

Once a creditor meets its evidentiary burden, it then may recover money damages from "parties who participate[d] in the fraudulent transfer . . . and [were] transferees of the assets and beneficiaries of the conveyance."  See Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1172 (2d Cir. 1993).  And in the bankruptcy context:

> to the extent that a transfer is avoided under section 544, . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

### A.    Resolution's $130,000 Conveyance to Amy MacKinnon

Horwitz seeks to avoid a $130,000 conveyance from Resolution to Amy MacKinnon that "Douglas and Amy MacKinnon assert . . . was [Douglas's] salary, transferred by Resolution to Amy's personal account to permit her to pay household bills and expenses."[10]  See Docket Item 9-2 at 14 (emphasis omitted).  This transfer is the

---

[9] In 2019, the New York State Legislature repealed Article 10 of the DCL and adopted the Uniform Voidable Transactions Act.  See 2019 N.Y. Sess. Laws Ch. 580 (A. 5622) (McKinney).  New York's implementation of this new law does not apply retroactively, so this Court applies the provisions of the DCL in effect when Resolution made the allegedly fraudulent conveyances.  See, e.g., In re BICOM NY, LLC, 633 B.R. 25, 37 (Bankr. S.D.N.Y. 2021).

[10] For ease of reference, the Court will refer to Amy MacKinnon as "Amy" and Douglas MacKinnon as "Douglas."

9

subject of A.P. 17-1029.  This Court agrees with Judge Kaplan that Horwitz has not met his burden on summary judgment.

Horwitz does not argue that Douglas never earned the $130,000 but instead contends that the conveyance lacked fair consideration because Amy did not work for Resolution and is a statutory insider under the bankruptcy code.  *See* Docket Item 9-3 at 15-17.  But "the general rule that treats a preferential payment to an insider of an insolvent corporation as a fraudulent transfer does not apply to salary payments."  *In re Wonderwork, Inc.*, 611 B.R. 169, 209 (Bankr. S.D.N.Y. 2020) (internal citation omitted).  To avoid a transfer of salary payments, "the trustee must establish that the . . . payments were in bad faith or . . . excessive in light of the [d]efendants' employment responsibilities."  *Id.* at 208 (citation and internal quotation marks omitted) (collecting cases); *see Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 716 F. App'x 23, 25-27 (2d Cir. 2017) (summary order).

Douglas testified before the bankruptcy court that he instructed Resolution to direct his compensation to Amy because she paid the family's bills and expenses.  *See* Docket Item 11-2 at 39-40.  Thus, Amy says, "the [c]laimed [t]ransfers were not 'conveyances' . . . at all, but merely part of Douglas['s] . . . compensation[,] which was being directed to [Amy's] account since she paid their joint family bills."  Docket Item 9-4 at 5 (emphasis omitted).  And, Amy adds, "[i]t did not cease being Douglas['s] . . . compensation simply because of the manner in which he directed that it be deposited, and there is no legal basis upon which to now render [her] liable for these payments."  *Id.*

Judge Kaplan explained that it was unclear whether Horwitz agreed that "Douglas earned that $130,000." Docket Item 9-2 at 14. And "[t]o the extent that there currently might be an issue of law . . . about whether a husband's 'earnings' are fair consideration for [the] husband's insolvent employer's payment to the employee's wife as 'homemaker,'" Judge Kaplan found that such legal issue "ha[d] not yet been fully fleshed[ ]out" in the summary judgment briefing and that the Court therefore should "not 'go there' at this time." *Id.* at 15. More specifically, Judge Kaplan noted that "[s]uch arguments typically arise in a [DCL section] 276 context ('actual' fraudulent acts), rather than in a 'constructive fraud' context," and "although 'actual fraud' was pled, it is not within the present motion for partial summary judgment." *Id.* at 14 (some capitalization omitted).

In his objection, Horwitz relies on *In re Lollipop, Inc.*, 205 B.R. 682 (Bankr. E.D.N.Y. 1997), which he says concerned "a dispute akin to" this one. *See* Docket Item 9-3 at 14-15. And it is true that *Lollipop*, like this case, concerned payments to a principal's wife. But in *Lollipop*—unlike here—there was no evidence that those payments were the husband's salary payments. On the contrary, the court noted that the wife "consistently pleaded her privilege against self-incrimination when asked to explain the checks" and that the defendant "failed to explain the transfers or to provide evidence of any consideration to the Debtor." *In re Lollipop, Inc.*, 205 B.R. at 685. Here, by contrast, Douglas testified that the payments were his salary.

This Court agrees with Judge Kaplan's assessment that, based on the record before it, Horwitz has not met his burden for summary judgment. The Court therefore

11

adopts Judge Kaplan's recommendation to deny Horwitz's motion for summary judgment without prejudice on this issue.  *See* Docket Item 9-2 at 15.

### B. Resolution's Remaining Conveyances

Judge Kaplan determined that Resolution's remaining conveyances were not supported by fair consideration.  *See id.* at 13.  As a result, Judge Kaplan recommended that this Court (1) "grant judgment against Douglas MacKinnon in the amount of $773,235.68 in A.P. 17-1040 and against Amy MacKinnon in the amount of $43,697.04 in A.P. 17-1039" and (2) grant judgment against Viking and Northern Resolution in an amount to be determined.  *Id.* at 3-4, 14-16.

No party objected to these conclusions, and this Court therefore need not review them de novo.  *See* 28 U.S.C. § 157(c)(1) (providing that "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo *those matters to which any party has timely and specifically objected*" (emphasis added)); Fed. R. Bankr. P. 9033(c)(1) ("The district judge . . . must review de novo—on the record or after receiving additional evidence—any part of the bankruptcy judge's findings of fact or conclusions of law *to which specific written objection has been made . . . .*" (emphasis added)).  This Court has nonetheless considered the analysis in Judge Kaplan's R&R and the submissions to him, and based on that review, this Court adopts Judge Kaplan's recommendations to grant judgment against Douglas MacKinnon in the amount of $773,235.68 and against Amy MacKinnon in the amount of $43,697.04.

As Judge Kaplan observed, however, and as noted above, the exact amount that Horwitz seeks against Viking and Northern Resolution is unclear. *See* Docket Item 9-2 at 4 (recommending "[m]oney judgments . . . against Viking and Northern Resolution" but noting "it is not clear whether or not their liability would be joint and several as to just a portion of a judgment against Douglas MacKinnon"). Accordingly, within 30 days of the date of this decision and order, Horwitz shall submit an affidavit specifying the amount of the judgment that he claims should be entered against Viking and Northern Resolution. The defendants may respond to the affidavit within 30 days of its filing, and Horwitz may reply within 14 days of the filing of any response.

## **CONCLUSION**

For the reasons stated above and in the R&R, Horwitz's motion for partial summary judgment filed in the United States Bankruptcy Court for the Western District of New York in 18-cv-33 (A.P. 17-1029) is DENIED, and the motions for summary judgment in 18-cv-38 (A.P. 17-1039) and 18-cv-39 (A.P. 17-1040) are GRANTED IN PART. Within 30 days of the date of this decision and order, Horwitz shall submit an affidavit detailing the amount sought against Viking and Northern Resolution. The defendants may respond to the affidavit within 30 days, and Horwitz may then reply within 14 days. The Court will then issue a further decision with respect to Viking and Northern Resolution.

SO ORDERED.

Dated:   June 20, 2025
         Buffalo, New York

                                         <u>*/s/ Lawrence J. Vilardo*</u>
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE